UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MARGARET VONHAGN,

                             Plaintiff,

                                                              <u>DECISION AND ORDER</u>

                                                                 06-CV-6469L

        v.

CORNING INCORPORATED,
THE CORNING INCORPORATED BENEFITS COMMITTEE,
SYNCHRONY INTEGRATED DISABILITY SERVICES, INC.,
METROPOLITAN LIFE INSURANCE CO., INC.,
also known as Metlife,

                             Defendants.
_____

Plaintiff Margaret Vonhagn filed this action against her former employer, Corning Incorporated ("Corning") and Metropolitan Life Insurance Co., Inc., ("Metlife"), the Plan Administrator ("Administrator") of Corning's benefit program, alleging that defendants wrongfully denied her application for short term disability benefits ("STD"). Plaintiff proceeds under the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1).

Corning, Metlife and other defendants now move for summary judgment (Dkt. #13, 14), and plaintiff cross moves for summary judgment (Dkt. #22).[1]

**I.      Standard of Review.**

Where, as here, the terms of an ERISA Plan give its Administrator the sole and absolute authority to interpret the Plan and determine claimants' eligibility for benefits, a determination by the Administrator is subject to a deferential standard of review, which examines only whether the Administrator's decision was arbitrary or capricious. *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989); *Darling v. DuPont deNemours & Co.,* 952 F.Supp. 162, 163 (W.D.N.Y. 1997). Under this standard, this Court may only overturn the final decision of the Administrator to deny benefits if it was "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Darling*, 952 F.Supp. 162 at 165 (quoting *Pagan v. Nynex Pension Plan,* 52 F.3d 438, 442 (2d Cir. 1995)). Stated differently, the focus of the reviewing court is "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Jordan v. Retirement Committee of Rensselaer Polytechnic Inst.,* 46 F.3d 1264, 1271 (2d Cir. 1995).

Furthermore, with respect to the evaluation of medical evidence by a Plan Administrator, ERISA mandates only that the Plan procedures afford a reasonable opportunity for a full and fair

---

[1] Several matters were resolved when the Court heard oral argument on the motion. It was conceded that Corning, the related Corning defendants and Synchrony Integrated Disability Services, Inc. should be dismissed from the action on the grounds that they are not proper parties, and I so ruled from the bench. As the Plan Administrator, Metlife is the only proper defendant. Plaintiff also stipulated and agreed to withdraw the second cause of action, which sought benefits related to STD, which was so ordered without prejudice (Dkt. #36).

review. *See* 29 U.S.C. § 1133(2). The heart of the issue now before the Court is whether plaintiff had a reasonable opportunity for full and fair review of her claimed disability. The existence of conflicting evidence, even a conflicting opinion from a claimant's treating physician, does not necessarily render the Plan Administrator's decision arbitrary and capricious. *See Baker v. Broadspire National Services, Inc.,* 2007 U.S. Dist. LEXIS 5780 (W.D.N.Y. 2007). Furthermore, "courts have no warrant to require [ERISA Plan] administrators automatically to accord special weight to the opinions of a claimant's treating physician; nor may courts impose a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's opinion." *Black & Decker Disability Plan v. Nord*, 548 U.S. 822, 830-831 (2003). *See also Baker*, 2007 U.S. Dist. LEXIS 5780 at *16 (same).

**II. Plaintiff's Claims.**

At the time the disputed disability period, plaintiff was fifty years old and had worked as an accountant at Corning since September 1998. Beginning in or around November 2004, plaintiff began complaining of lower back pain. Corning responded by modifying her work station to include ergonomic accommodations, including a sit-stand desk and a coccyx-cut-out chair. Despite these accommodations, plaintiff stopped working due to low back pain on February 10, 2005.

On February 11, 2005, plaintiff contacted Metlife and initiated a claim for STD benefits.[2] By letter dated February 18, 2005, Metlife informed plaintiff that her claim for benefits had been

---

[2] Prior to the instant claim, plaintiff had filed for – and been granted – STD benefits on two other occasions.

denied because Metlife had been unable to obtain medical documentation to support plaintiff's claim of disabling back pain. Plaintiff's primary care physician, Dr. Michael Cilip, thereafter completed and submitted to Metlife a physician questionnaire concerning a February 10, 2005 office visit by plaintiff. Dr. Cilip opined that plaintiff was "disabled" with a primary diagnosis of "back pain" with findings of "tender low back," and noted that although plaintiff was not in any acute distress, she felt unable to continue working at her current level. Upon review of the questionnaire by a Metlife nurse consultant, Metlife informed plaintiff on February 25, 2005 that her claim had once again been denied.

Plaintiff appealed the denial and submitted additional medical records. Metlife forwarded plaintiff's complete records to an outside orthopedic surgeon, Dr. William D. Abraham, for a Network Medical Review. After reviewing the records, Dr. Abraham determined that plaintiff's subjective complaints of pain were "out of proportion" to the relevant imaging studies and objective evidence, and he believed that plaintiff failed to establish that she was unable to perform the requirements of her sedentary position at Corning. He estimated that plaintiff had the physical capacity to sit continuously for two hours, for a cumulative total of up to seven hours, and to stand for two hours, for a cumulative total of up to five hours, in an eight-hour work day.

Based upon Dr. Abraham's conclusions, Metlife informed plaintiff on July 18, 2005 that its original decision to deny her STD claim would be upheld, based upon objective evidence including her medical records, and Dr. Abraham's report. Plaintiff's subjective reports of incapacitating pain were found to be unsupported by any objective physical examination findings or testing.

I have considered the record evidence as well as the parties' submissions on the pending motions. I find that Metlife's determination was reasonable, supported by substantial evidence in the record, and was not arbitrary and capricious.

First, plaintiff claims that Metlife overlooked record evidence concerning her physical limitations and subjective complaints of pain, including Dr. Cilip's opinion that plaintiff was incapable of sitting, standing or walking for more than one hour each in an eight-hour work day. However, the evidence concerning plaintiff's reports of pain was included in the materials reviewed by Dr. Abraham, who expressly noted that he found plaintiff's complaints to be "out of proportion" and "not supported" by objective evidence in the record. Dr. Abraham also sought to consult with Dr. Cilip concerning his report of plaintiff's physical limitations, but Dr. Cilip refused to do so. Based on these facts, I cannot conclude that Dr. Abraham's determination was erroneous. *See Maniatty v. UNUMProvident Corp.*, 218 F. Supp. 2d 500, 504 (S.D.N.Y. 2002) (it was not arbitrary and capricious for Plan Administrator to place greater reliance on the opinions of its reviewing physicians than those of plaintiff's examining physicians, or to demand objective evidence rather than accepting subjective statements of pain).

Plaintiff also alleges that Metlife failed to consider the mental limitations caused by her pain, and/or the narcotics with which she was treated. Dr. Cilip's office notes indicated that plaintiff was using Vicodin, a narcotic analgesic, every three hours in doses which impaired her ability to perform the mental requirements of her position. *See* Dkt. #14, Exh. A at Vonhagn 0126 (On February 24, 2005, Dr. Cilip notes that: "[t]he disability company sent me a letter . . . that talks about her job description and includes the fact that she has to implement financial concepts, be quite analytical .

. . [s]he is capable of none of this on a heavy narcotic regimen and so far she has not had any improvement at all"). Plaintiff later complained to her pain management specialist that her prescribed dosage of Neurontin, another painkiller, made her feel as though her brain had been "scrambled." (Dkt. #15, Exh. A at Vonhagn 0119). However, no psychological or mental limitations were listed by plaintiff in her application for disability benefits – which identified the source of her alleged limitations solely as "back pain" – and there is no indication that Dr. Abraham ignored the record evidence concerning plaintiff's prescription medications. Indeed, it is undisputed that plaintiff had "not had any improvement at all" with the use of narcotics, and Dr. Abraham concluded that plaintiff's use of such medications was unwarranted.

Plaintiff's subsequent discontinuance of Neurontin, on the instructions of her pain management specialist and on the basis that it had failed to provide her any relief, supports Dr. Abraham's conclusion. (Dkt. #15, Exh. A at Vonhagn 0132).

Plaintiff also argues that Metlife should have ordered additional physical examinations, in light of Dr. Abraham's conclusion that, "[m]edical review alone cannot always optimally determine an individual's functionality. Obviously, hands on examination would prove valuable in an effort to assess Ms. Vonhagn's subjective complaints and the context of any objective findings. However, objective information in the file does not support total inability to function." (Dkt. #15, Exh. A at Vonhagn 0104). Nonetheless, plaintiff offers no evidence that additional physical examinations would have yielded additional objective findings that would support a conclusion that she was disabled. Because there has been no showing that plaintiff's medical records were substantially incomplete or that a physical examination was necessary, rather than simply "optimal" for the

determination of her physical limitations, I find that defendants' review of plaintiff's claim was adequate. *See Zoller v. INA Life Ins. Co.*, 2008 U.S. Dist. LEXIS 67475 at *39-*40 (S.D.N.Y. 2008) ("it is well settled that, in denying a claim for benefits under ERISA, the plan administrator may rely on the opinion of independent medical reviewers who have not conducted an examination of the applicant, even where the reviewer's opinion conflicts with that of the treating physicians"); *Fitzpatrick v. Bayer Corp.*, 2008 U.S. Dist. LEXIS 3532 at *45 (S.D.N.Y. 2008) (an administrator's physicians have no duty to conduct in-person physical examinations of a claimant: review of the record is sufficient). The cases relied upon by plaintiff, which concern the benefit of a face-to-face examination in the distinctly different context of psychiatric disorders for claims of mental disability, are inapposite. *See e.g.*, *Zoller*, 2008 U.S. Dist. LEXIS 67475 at *41 (finding reviewing psychiatrists's opinion unsupported by the record where there was no first-hand examination of the plaintiff, because "[u]nlike cardiologists or orthopedists, who can formulate medical opinions based upon objective findings derived from objective clinical tests, the psychiatrist typically treats his patient's subjective symptoms"), *citing Winkler v. Metropolitan Life Ins. Co.*, 170 Fed. Appx. 167, 168-69 (2d Cir. 2006) ("[f]irst-hand observation is especially important in the context of assessing psychiatric disabilities").

Plaintiff further argues that, even if Dr. Abraham's opinion is credited without the benefit of a "hands on" examination of plaintiff, his indication that plaintiff could sit for up to two hours at a time during the workday for a cumulative total of 5-7 hours, as well as stand for a cumulative total of 3-5 hours, would not permit plaintiff to fulfill the requirements of her position. This argument is unavailing. Plaintiff offers no evidence that her position, however sedentary, required her to sit

continuously for more than 2 hours at a time, and it is undisputed that Corning had provided plaintiff with a sit-stand desk at her workstation, which would permit her to alternate between sitting and standing during the workday. As such, Dr. Abraham's conclusion was consistent with the requirements of plaintiff's position.

Finally, plaintiff argues that Metlife's denial of coverage amounted to an improper "rubber-stamping" of Dr. Abraham's opinion, rather than a reasoned analysis of the entire record. While it is true that Metlife relied primarily on Dr. Abraham's opinion in denying plaintiff's claim, its determination lists the record evidence upon which Dr. Abraham relied, describes the objective evidence submitted by plaintiff as well as Dr. Abraham's findings and the grounds therefor, evaluates plaintiff's subjective complaints of pain, and compares her physical capabilities with the exertional requirements of her position. (Dkt. #14, Exh. A at Vonhagn 0096-0097). I find that Metlife's analysis, including its reliance upon Dr. Abraham's opinion, was adequate. *See generally Pava v. Hartford Life & Accident Ins. Co.*, 2005 U.S. Dist. LEXIS 41753 at *37-*38 (E.D.N.Y. 2005) (it is not *per se* unreasonable for a Plan Administrator to credit the opinions of it s reviewing physician over those of other physicians).

## CONCLUSION

For the foregoing reasons, I conclude that plaintiff was afforded a reasonable opportunity for a full and fair review of her short term disability claim, and the administrator's determination was not arbitrary and capricious. Defendants' motions for summary judgment (Dkt. #13, 14) are

granted, plaintiff's cross motion for summary judgment (Dkt. #22) is denied, and the Complaint is dismissed, with prejudice.

    IT IS SO ORDERED.

                        _____
                            DAVID G. LARIMER
                          United States District Judge

Dated: Rochester, New York
       November 25, 2008.